*Margin:* LOMBARD *v.* JACOBS.

---

## MALLARD and ARMISTEAD *v.* JOHN M. CARPENTER.

Where an error of fact as to the domicil of a party has been alleged in the pleadings, it may be revoked, even in a suit between the same parties, and can have but little weight in a controversy in which a third person is a party. C. C. 2270.

The only inscription of a judicial mortgage which binds slaves, is one in the parish where the owner is domiciliated, unless they be attached to a plantation; in which case, the mortgage may be recorded in the parish in which they are situated. C. C. 3318.

When the inscription of a mortgage upon slaves has once been properly made, it remains binding, notwithstanding the subsequent removal of the slaves.

A judicial mortgage cannot affect slaves not attached to a plantation, and belonging to a party residing out of the State, even though the slaves be subsequently brought into the parish in which the judgment is recorded. In that event, they are to be regarded as movables.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Durant* and *Hornor*, for plaintiff in rule. *P. E. Bonford*, for defendants. The judgment of the court was pronounced by

Rost, J. This litigation was commenced by rule. It is a contest in which *Glendy Burke* claims to be paid, by preference to the defendants in the rule, the amount of a judgment in favor of *Burke, Watt & Co.*, against *Green* and *McDougall*, out of the proceeds of certain slaves sold under execution by the sheriff, as the property of *Green*.

*Burke* recorded the judicial mortgage under which he claims in the parish of Orleans, on the 23d of June, 1847, when, by his own admission, it appears that *Green* lived in the parish of Jefferson from 1846 till December, 1847, at which time he removed to the State of Mississippi, where he has resided ever since.

The counsel for the plaintiff in the rule has called our attention to a bill of exceptions, taken by him during the trial, to the opinion of the judge, admitting

*Margin arithmetic:*
6 | 397
47 | 517
6 | 397
51 | 1472
6 | 397
52 | 1672

MALLARD
v.
CARPENTER.

evidence to prove that the domicil of *Green* was in the parish of Jefferson when the plaintiff's judgment was recorded in the parish of Orleans, on the ground that the defendants, in their proceedings against *Green*, had represented him as residing in the parish of Orleans, and that they were estopped from contesting their own admission.

*Green*, although living in Lafayette, was a member of a commercial firm doing business in this city; and the fact that he suffered himself to be sued here could not defeat the operation of the law, which requires judicial mortgages to be recorded in the parish of his domicil before they can affect his slaves. Tho statement, that *Green* resided in the parish of Orleans, was made through an error of fact, and might be revoked, even if it had been made in a suit between the same parties. C. C. 2270. As the plaintiff in the rule was not a party to the suit in which the admission was made, it can have but little weight in the present controversy. 1 Greenleaf on Evidence, parag. 206, 212. The record in the injunction suit of *Maxwell* v. *Mallard* and *Armistead* was properly admitted in evidence, to prove that there was such a suit, and that the defendants had been restrained from proceeding under their seizure by the injunction.

It is urged, that after the removal of *Green* to the State of Mississippi, the slaves were sent to the parish of Orleans, where they remained with a short interval until they were sold, and that as soon as they came here, their master having no longer a domicil in the State, the judicial mortgage, resulting from the record of the plaintiff's judgment in this parish, attached to them.

We know of no law by which this position can be sustained. The rule is, that the inscription of a judicial mortgage, in order to affect slaves, must be made in the parish where the owner has his domicil. C. C. 3318. The only exception to this rule is the case of slaves attached to a plantation, in which the inscription of the mortgage in the parish where the land is situated, attaches to them, as it does to the team and farming utensils used in the cultivation of the land.

There is nothing in the objection, that a debtor might, under that view of the law, free his slaves from the judicial mortgages affecting them, by removing from the State. When the inscription has once been made at the proper place, the mortgage continues binding upon the slaves, notwithstanding any subsequent change of domicil of the master.

We are of opinion, that under our present legislation, a judicial mortgage cannot affect slaves not attached to a plantation, and belonging to a party living out of the State; and that all such slaves stand on the same footing as movables, so far as judgment creditors are concerned.

The judgment discharging the rule is therefore affirmed, with costs.